**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Criminal No. 1:08-CR-132-003** |
| | ) | **Sentencing: 10/16/09** |
| **JORGE PARADA, et al** | ) | **Judge: Liam O'Grady** |
| | ) | |
| **Defendant(s).** | ) | |
| | ) | |

## POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS

**COMES NOW,** the Defendant, **JORGE PARADA**, by and through John O. Iweanoge, II and THE IWEANOGES FIRM, P.C., his attorneys, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the advisory United States Sentencing Guidelines (the "Guidelines"), and this Court's Policy Regarding Procedure to be followed in Guideline Sentencing, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case and its Addendum and he objects to the calculation of the Guidelines as detailed below. Furthermore, even if the Court adopts the Guidelines calculations as recommended by the PSR, Defendant asserts that a sentence substantially below the calculated range would be sufficient, but not greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a):

## OBJECTIONS TO THE GUIDELINES

1. **Jorge Parada's base Offense Level should be 24 pursuant to U.S.S.G. § 2D1.1(c)(8).**

The probation officer calculated the Base Offense Level ("BOL") under 2D1.1(c)(8) at 24 because it was determined that the offense involved less than 500 grams. Jorge Parada should not be held responsible for any firearm pursuant to § 2B1.1(b)(1), because it was not specifically charged and/or found by the Jury. There has been no evidence presented that Parada participated in or was present for purchase of the firearm while he was not here. The firearm was not a part of any

1

joint activity on the part of Parada, because mere knowledge is not enough. Therefore, Parada's BOL should be 24 not 26 pursuant to U.S.S.G. § 2D1.1(c)(8).

Additionally, Jorge Parada should not be held responsible for any Obstruction of Justice pursuant to § 3C1.1(a). Contrary to the PSR, no one testified at trial that he was intimidated by Mr. Parada. In fact to the contrary, the testimony was that Mr. Parada said that if the Government knew he drove the car he would be charged with murder, which was impeached with Jorge Parada's statement to Law Enforcement upon his arrest on April 19, 2008. Therefore, Parada's BOL should be 24 not 28, pursuant to U.S.S.G. § 2D1.1(c)(8). It is important to note that none of the other defendants in this case on Page 5, paragraphs 9-14 received any firearm enhancement pursuant to U.S.S.G. § 2B1.1(b)(1), which creates disparity in sentencing.

## 2. Jorge Parada should not be held accountable under § 1B1.3 for all of the actions of his co-defendants.

United States Sentencing Guideline § 1B1.3, Relevant Conduct, instructs the Court to determine the base offense level and the specific offense characteristics on the basis of: 1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procedure, or willfully caused by the defendant"; and 2) "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction…" U.S.S.G. § 1B1.3(a)(1)(A)-(B). In other words, a defendant can be sentenced based on his own conduct under § 1B1.3(a)(1)(A) as well as the accountability for the conduct of others, the Court must first determine the scope of the criminal activity that the defendants agreed to jointly undertake. Once that is determined, the Court must find which acts or omissions of others were reasonably foreseeable to Mr. Parada and if they were in furtherance of the jointly undertaken activity. See *United States v. Gilliam*, 987 F.2d 1009, 1012-13 (4th Cir.

1993)(the acts must have been within the scope of the defendant's agreement). "The objective of ensuring fairness in sentencing precludes the automatic application of a principal offender's base offense level to a defendant convicted of aiding and abetting the commission of the underlying offense. The guideline require a sentencing Court to treat the aider and abettor as though he or she committed the underlying offense; not as though he or she and the principal offender are the same person." *United States v. Hendrick*, 177 F3d 547, 551 (6th Cir. 1999).

The Application Notes to §1B1.3 give several illustrations of conduct for which the defendant is accountable according to the advisory guidelines. For example, in illustration number 5, the Guideline posit, "Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) other drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (i.e., the one delivery)." U.S.S.G. § 1B1.3 comment. (n. c5). Similarly, in illustration number 7: "Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams. Defendant S is accountable only for that 500 gram amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R." U.S.S.G. § 1B1.3 comment. (n. c7).

In this case, Jorge Parada should only be accountable for the criminal activity that was reasonably foreseeable and arising from the scope of the criminal activity he agreed to jointly undertake. Mr. Parada's conduct does not suggest that he agreed to the sale of drugs. However, as the above examples illustrate, even if the Court determines that Jorge Parada was fully aware that the co-defendants sold larger quantities of cocaine, as long as Parada's agreement and conduct was

limited to one sale, Parada is accountable for only the one drug sale.

**3.  Jorge Parada is not entitled to the Career Offender Enhancement and his Criminal History is Overrepresented**

In this case, Mr. Parada's described circumstances are one of minor role. That role consisted of being present in a car on one occasion and a couple of transactions involving Pelon between September/December 2007 to March 2008. Mr. Parada's felony criminal history includes one drug related prior conviction: unlawful delivery of a controlled substance, to wit: cocaine in 2004 when he was 28 years old  and was sentenced to four (4) years probation, and an assault on a police officer in 2001 when he was 24 years old and sentenced to two (2) years ESS.

The sentencing guidelines found to apply to this case, both with respect to the instant offense conduct and with respect to the career offender guidelines, are driven by the determination of two prior felony convictions and drug quantity which Mr. Parada did not determine, control, know, have a stake in, or even know what that quantity was with respect to the drug conspiracy.

Based on his two prior felony convictions one for assault that is not aggravated and drug which quantity, guideline computations for this instant offense resulted in a combined adjusted offense level of 28, a criminal history category of V, and a guideline range of 130-162 months.

However, because Mr. Parada's two prior convictions were found to trigger the career offender guideline, the drug quantity which Mr. Parada neither controlled, determined, had a stake in, nor knew, in the PLS clique conspiracy caused a drastic further increase in the adjusted offense level to 34 and the criminal history level to V resulting in a guideline range of 262-327 months.

Mr. Parada, however, is not a "heartland" career offender. Both his offense conduct in this case, and his two prior convictions, betoken low level involvement in drug trafficking and/or assault on a police officer. While the repetitive behavior merits a "substantial" term of imprisonment, it does not merit an increase of 262-327 months above the bottom of the guideline range which applies to Mr. Parada's conduct involved in this case and to Mr. Parada's actual

criminal history which is overrepresented pursuant to U.S.S.G. § 4A1.3.

After the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005) the United States Sentencing Guidelines are no longer mandatory, but are advisory. They no longer dictate results nor do they limit discretion in the same manner as before. This court is authorized to weigh all the statutory factors set forth in the Sentencing Reform Act[1], and to exercise greater discretion in deciding what a reasonable sentence is.

In this case the guideline range computed based on Mr. Parada's conduct in this case provides for substantial punishment. The defendant's recommended sentence of less than 92-115 months also provides substantial punishment for Mr. Parada's conduct in this case, and diverges from the computed range - and from the career offender range for reasons which are warranted.

Deviation from the computed career offender guideline range is warranted, in the first place, because Mr. Parada did not determine, control, have a stake in or know the drug quantity involved in the PLS clique conspiracy in which he involved himself. Ignorance of the quantity, as well as lack of a benefit derived from having a more central stake in the success of a conspiracy, does differentiate peripheral participants with regard to what term of imprisonment is warranted.

_____

[1] 18 U.S.C. § 3553(a) directs courts to "… impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. Those purposes are:
   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)  to afford adequate deterrence to criminal conduct;
   (C)  to protect the public from further crimes of the defendant; and
   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
Insofar as is pertinent here, § 3553 (a) further directs sentencing courts to consider the following factors in determining the minimally sufficient sentence:
   1)   "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553 (a) (1)) ; 2) "the kinds of sentences available" (§ 3553 (a) (3)); 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553 (a) (6)).

The deviation - from the career offender range is warranted for the further reason that Mr. Parada's conduct in all three relevant cases is minor or low-level in comparison to the major traffickers which were the targets of the statutory mandatory minimum sentences and the career offender guideline which the statutory mandatory sentences trigger.[2]

The increase in guideline range effectuated by the career offender guideline is triggered in this case where Mr. Parada was not involved in aggravated assault and played a minor role, by drug quantity which Mr. Parada neither determined, controlled, had a stake in, nor knew, and by a corollary increase in criminal history level unconnected to Mr. Parada's actual background.

Deviation from the career offender computations is warranted also because the career offender guideline itself is a cause of unwarranted sentencing disparity in two respects. First, it ignores and undoes the Sentencing Commission's determination that drug quantity should have a more limited influence on the determination of sentences appropriate for minor and minimal participants, as Mr. Parada in this case.

In addition, the Sentencing Commission, itself, has found that the career offender guideline's provision that criminal history should be treated as a level VI, even for offenders with lower actual criminal history scores overstates the risk of recidivism which the criminal history score is intended to measure:

```
[P]reliminary analysis of the recidivism rates of drug
trafficking offenders sentenced under the career offender
guide-line based on prior drug convictions shows that their
rates are much lower than other offenders who-10 are assigned
to criminal history category VI .... The recidivism rate for
career offenders more closely resembles the rates for
```

---

[2] During floor debates concerning the mandatory minimum provisions contained in the Anti-Drug Abuse Act of 1986, Senator Byrd observed: "We divide these major drug dealers into two groups for purposes of fixing what the required jail terms shall be: For the kingpins -- the masterminds who are really running these operations -- and they can be identified by the amount of drugs with which they are involved -- we require a jail term upon conviction [of 10 years]…
Our proposal would also provide mandatory minimum penalties for middle-level dealers as well. Those criminals would also have to serve time in jail. The minimum sentences would be slightly less than those for the kingpins, but they nevertheless would have to go to jail -- a minimum of five years for the first offense and ten years for the second." 132 Cong. Rec. S. 14, 301 (daily ed. Sept. 30, 1986) *(quoted in United States v. Savinovich*, 845 F.2d 834, 839 n.2 (9th Cir.1988).

offenders in the lower criminal history categories in which
they *would be* placed under the normal criminal history
scoring rules in Chapter Four of the *Guidelines Manual.* The
career offender guideline thus makes the criminal history
category a *less* perfect measure of recidivism risk that it
would be without the inclusion of offenders qualifying only
because of prior drug offenses.

United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: *An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, (2004) at 134.

If Mr. Parada's actual criminal history score of V were utilized, as this report of the Sentencing Commission suggests it should, the career offender guideline range would be reduced and the sentence recommended by defendant becomes just punishment under the circumstances of this unfortunate case that is AOL 24 resulting in 92-115 months.

Even without any career offender increase in prison time, Mr. Parada's sentence satisfies the directive to the - Sentencing Commission set out in 28 U.S.C. § 994 (i) that they assure that the guidelines specify a substantial period of imprisonment for a person who has been convicted of two felonies committed on separate occasions.

In addition to being minor by comparison to the major traffickers targeted by the statutory mandatory minimums and the career offender guideline, Mr. Parada's prior convictions both occurred in a short time period when he was a youthful offender.[3] He received and served prison sentence for the offenses and did not re-offend until 2005 and the minor role he played in this case.

---

[3] *United States v. Naylor*, 359 F. Supp. 2d. 521 (W.D. Va. Mar. 7, 2005) (Jones, J.) (where PSR classified defendant as career offender based on two sets of convictions arising from conduct occurring during one six-week period when defendant had turned 17, sentencing defendant to 120 months (instead of 188-235 months) based on defendant's young age at time of prior conduct (citing *Roper v. Simmons*, U.S. Mar. 1, 2005) and fact that convictions barely fell within Chapter Four rules regarding counting of prior convictions).

In *U.S. v. Bowser*, 941 F.2d 1019, 10th Cir. 1991, it was held that the nature and type of convictions did not firmly represent *Bowser's* placement in the Armed Career category, based on strength of offense and proximity of predicate offense convictions.

For all of these reasons, there is nothing "unreasonable" about declining, in the circumstances of this case, to treat the career offender guideline range as the yardstick by which to judge what term of imprisonment is minimally sufficient to satisfy the purposes of sentencing, or from which to judge the reasonableness either of the sentence recommended by the defendant, or the "sufficient, but not greater than necessary" term called for by the Sentencing Reform Act.

It is the position asserted on Mr. Parada's behalf that use of the career offender range in this case is not reasonable and that deviation from it is fully warranted for the reasons stated.

Finally, the court is requested to deviate from the range computed in the presentence investigation report to a term as close to the recommendation of the defendant as possible because of the unique circumstances of this case.[4]

---

4 *United States v. Moreland*, 366 F. Supp. 2d. 416 (S.D. W. Va. April 27, 2005) (Goodwin, J.) (where career offender guideline range was 360-life, sentencing defendant to 120 mandatory minimum where instant offense involved 7.85 grams of crack for which guideline range would have been 78-97 months, definition of "controlled substance offense" does not distinguish between distribution of single marijuana cigarette and drug kingpin, defendant's priors were relatively old and minor, and imposition of sentence 20 years longer would cost enormous amount of money).

**4. Jorge Parada should receive a reduction for his minor role in this offense pursuant to U.S.S.G. § 3B1.2**.

Based on a particular defendant's role in the offense, the Court should decrease the offense level by 4 levels if the defendant was a minimal participant in the minimal participant in the criminal activity, or by 2 levels if the defendant was a minor participant, or by 3 levels if the defendant's conduct falls somewhere in between that of a minor participant or a minimal participant. U.S.S.G. § 3B1.2. The Guidelines define a "minimal participant" as one who is "plainly among the least culpable of those involved in the conduct of the group." U.S.S.G. § 3B1.2 comment. (n. 4) "[T]he defendants *lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others* is indicative of a role as a minimal participant." Id. (emphasis added). The Guideline's commentary defines "minor participant" as someone "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 comment. (n. 5).

Parada was not directly involved in the sale of drugs, rather, he simply was a member of PLS clique and was present on a couple of occasions that others did suspected drug transactions. Mr. Parada did not financially profit nor did he participate in any of the arrangements to sell any drugs. In fact, when he was at Pelon's store alone, they never discussed any drug sale or transaction, nor with the undercover officer. He was not in the business of selling drugs, he merely got unwittingly dragged into this because he is a member of PLS clique and was only here in the Washington, DC Metropolitan area either September and/or December 2007 until January and/or February 2008.

It is defendant's burden to show that his conduct qualifies for a minimal or minor role reduction; as such, Parada submits that the trial evidence does that succinctly.

**5.  Jorge Parada is entitled to Departure based on Illegal Alienage**

A departure may be warranted if the defendant is a deportable alien. According to *United States vs. Renford George Smith*, 27 F. 3d 649 (D.C. Circuit 1994); *United States vs. Gideon Cassells*. 66 F.3d 377 (4th Cir. W.Va. 1995), a departure from the federal sentencing guideline may be warranted for a deportable alien since a period of incarceration is harsher for illegal aliens as they are not entitled to privileges available to United States citizens, pursuant to the Bureau of Prison Guidelines.

The Federal Sentencing Guideline Manual Ch. 1, Pt. A. § 2 states that 'If…a particular case presents a typical features, the Act allows the court to depart from the guidelines and sentence outside the prescribed range."

In *Smith* 27 F. 3d at 655 the court held that "a downward departure may be appropriate where the defendant as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence."

Mr. Parada's status as a "deportable alien renders him ineligible for benefits of 18 U.S.C. § 3624(c), which directs the bureau of prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences under conditions (possibly including home confinement) that will afford the prisoner a reasonable opportunity to adjust and prepare for reentry into the community. '*Id at 654.* The Bureau of Prisons regulations bar Mr. Parada (non-United States citizen) from assignment to a community corrections center except in what appear to be rare circumstances. See Federal Bureau of Prisons, Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9(June 15, 1992).*Id at 651.*

The Bureau of Prison policy will prevent Mr. Parada from being assigned to serve any part of his sentence in a minimum-security prison, unlike a United States citizen. Mr. Parada "a

deportable alien will be assigned to a more drastic prison than otherwise solely because his escape would have the extra consequence of defeating his deportation." *Id at 655*. Therefore, Mr. Parada's status as a deportable alien would have clearly generated increased severity and thus a proper subject of a departure." *Id*. The court in *Cassells* 66 F. 3d 317, also indicated that the district court has discretion to depart from the Federal Sentencing guidelines based on the above mentioned reasons. *See also* 18 U.S.C. § 3553(f).

### 6.   Jorge Parada is entitled to Departure based on Coercion/Duress

Defendant Mr. Parada submits that he is deserving of a downward departure in his offense level based on duress/coercion pursuant to USSG § 5K2.12. USSG § 5K2.12 sets the parameters for consideration of a downward departure of sentence based on coercion or duress. The guideline recognizes that coercion or duress may be present in a way that does not constitute a "complete defense" but that nonetheless merits consideration at sentencing:

> The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.

Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. USSG. § 5K2.12. The court may "decrease the sentence below the applicable guideline range" under this standard. Id.

In *U.S. v. Cheape*, 889 F.2d 477 (3d Cir. 1989), the Third Circuit clarified the meaning of USSG. § 5K2.12 holding that the Commission intended to allow downward departures in some cases where evidence of coercion "does not amount to a complete defense." 889 F.2d at 480. In other words, in USSG. § 5K2.12 the Commission has provided a "broader standard of coercion as a sentencing factor than coercion as required to prove a complete defense at trial." Id. The

Third Circuit concluded that a successful invocation of USSG § 5K2.12 does not require that all of the elements necessary to assert coercion as a criminal defense be met. Instead, USSG § 5K2.12 does "not require proof of immediacy or inability to escape; nor does it limit the feared injury to bodily injury." Id. In other words, USSG § 5K2.12 creates an "incomplete" or "imperfect" defense of duress/coercion that is relevant only for sentencing purposes, not for underlying determinations of criminal liability. Numerous other federal courts -- although not in the third Circuit--have adopted the analysis first offered in *Cheape*. See, e.g., *U.S. v. Isom*, 992 F.2d 91, 94 (6th Cir. 1993); *U.S. v. Smith*, 987 F.2d 888, 891 (2d Cir. 1993); *U.S v. Amparo*, 961 F. 2d 288, 292 (1st Cir. 1992), cert. denied, 506 U.S. 878 (1992); *U.S. v. Johnson*, 956 F.2d 894, 898 (9th Cir. 1992); *U.S. v. Gaviria*, 804 F.Supp. 476, 479 (E.D. N.Y. 1992); *U.S. v. Nelson*, 740 F.Supp. 1502, 1516 (D. Kan. 1990).

Further, the fact that the defendant acted "voluntarily" does not deprive him of § 5K2.12's incomplete defense of duress at sentencing: "A fortiori, the incomplete defense of duress supposes a voluntary crime, carried out by a person whose personal characteristics and personal perception of the circumstances of the situation made him susceptible to the threat of force. " Id. at 901. MS-13 as the trial testimony revealed is a violent gang that enforces its rules with deadly consequences against its own members if you do not go along. Additionally, Pelon testified that Mr. parade was always in a hurry to leave on the couple of occasions he saw him but that he did not participate in the drug sales with the other PLS clique members that sold him drugs.

In sum, the district court should grant a § 5K2.12 downward departure to Mr. Parada because he did not voluntarily join the conspiracy and the incomplete duress may mitigate the defendant's punishment where his continued participation in the criminal enterprise or level of involvement was coercively imposed. *U.S. v. Johnson*, 956 F.2d 894 (9th Cir. 1992).

Additionally, if the Court concludes departures under Chapter 5 are not warranted or not applicable nor sustains defendant's objections, the Court may then consider whether the following factors suggest a variance from the guidelines is warranted.

## LEGAL ARGUMENT

In two recent summary reversals, the Supreme Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing Court's independent determination of a just sentenced based upon consideration of the statutory sentencing factors spelled out in 18 U.S.C. § 3553(a). *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S.Ct. 840 (2009). The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing that the Sentencing Guidelines are simply an advisory tool to be considered alongside the other § 3553 statutory considerations.

"Our cases do not allow a sentencing Court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*, 129 S.Ct. at 892. "The Guidelines are not only *not mandatory* on sentencing Courts; they are also not to be *presumed* reasonable." *Id*. (emphasis in original). In other words, sentencing Courts commit legal error by using a Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. See also *United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009) ("[I]t is clear that Spears applies with equal force to sentencing decisions under the new crack-cocaine Guidelines and that District Courts may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.")

Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *United States v. Booker*, 543

13

U.S. 220, 259-60 (2005). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

Upon consideration of those factors, a sentencing Court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007) (emphasis added). While the District Court must begin its analysis by correctly calculating the advisory sentencing range, the sentencing Court is then free in light of the other statutory sentencing factors to impose an entirely different sentence. This is because, under *Rita*, a District Court is free simply to disagree, based on the § 3553(a) sentencing factors, with the U.S.S.G.'s "rough approximation" of the appropriate sentence for any given case. *Id.*

The primary directive of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. After *Booker* and *Gall*, therefore, sentencing Courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a). Indeed, whatever sentence the Court imposes after appropriately considering all the statutory sentencing factors – "whether inside, just outside, or significantly outside the Guideline range" – must be reviewed by a Court of Appeals under a "deferential

abuse-of-discretion standard." See *Gall*, 552 U.S. 38 (reversing Court of Appeals and reinstating a probationary sentence where advisory sentencing range was 30-37 months).

## APPLICATION OF SENTENCING FACTORS PURSUANT TO 18 U.S.C. § 3553(a)

### Application of the Section 3553(a)Principles and Factors of This Case

Mr. Parada was convicted of Count 7, conspiracy to distribute less than 500 grams of cocaine. The probation officer prepared a Presentence Report ("PSR"). The officer first set the base level at 24 pursuant to U.S.S.G. § 2D1.1(c)(8) and 2 level enhancement for possession of firearm pursuant to U.S.S.G. § 2B1.1(b)(1) and another 2-level enhancement for Obstruction of Justice pursuant to U.S.S.G. § 3C1.1(a) resulting in a total offense level of 28. That offense level when coupled with Mr. Parada's criminal history category of V results in advisory guideline imprisonment range of 130-162 months. However, because of Mr. Parada's two prior felony convictions the PSR writer classifies him as a career offender pursuant to U.S.S.G. § 4B1.1 yielding an offense level of 34 resulting in a guideline range of 262-327 months.

### A.      The Nature and Circumstances of the Offense

One of the factors the Court is directed to consider under Section 3553 is the nature and circumstances of the offense. Here, the nature and circumstances of Mr. Parada's role in the offense, and prior contact with the Criminal Justice System, makes a sentence that is not in disparity with the other co-defendants in this case ranging from 46-90 months reasonable.

### B.      The Circumstances and History of the Defendant

Section 3553 also directs the Court to consider the circumstances and history of the Defendant when determining what sentence is appropriate. Mr. Parada who is in the United States as a deportable alien hails from El Salvador where his family resides.

While Mr. Parada has maintained stable employment over a long period of time, good relationship with his family, however, he joined the gang as a sense of belonging and did not personally involve himself in an ongoing drug activity by the PLS clique that started prior to his arrival to the metro area. In fact, he was under duress as previously stated and freely spoke with Law Enforcement without an attorney upon arrest. This history of redeemable qualities and duress should be considered when determining what sentence is reasonable under Section 3553.

### C.    The Need to Avoid Unwarranted Sentencing Disparities

The need to avoid unwarranted sentencing disparities is another consideration under Section 3553. Imposition of a sentence inside the guideline range would in this instance increase sentence disparities among defendants with similar records found guilty of similar conduct, rather than avoid such disparity, as called for by USSG. Mr. Parada who is not a lawful permanent resident and/or citizen of the United States, and is subject to removal/deportation from the United States because of this conviction and as such will be incarcerated longer if sentenced within the Guidelines while he awaits deportation to his home country, El Salvador or a third country assuming he cannot safely be removed/deported to El Salvador because of the circumstances aforestated.  The court in *Cassells* 66 F. 3d 317, also indicated that the district court has discretion to depart from the Federal Sentencing guidelines based on the above mentioned reasons. *See also* 18 U.S.C. § 3553(f).

To sentence Jorge Parada to the maximum sentence allowable by law of 30 years or 327 months requested by the Government would create an unwarranted disparity in sentencing between Mr. Parada and the more culpable PLS clique co-defendants in this case namely:

**1.**    Gloria Arias-Aguilera – 63 months; **2.**    Marcelo Sinani-Mayorga – 42 months; **3.**  Jose Rubio-Parada – 60 months; **4.**  Alexander Portillo – 42 months; **5.**  Jose Rivera – 90 months; **6.**

Silvia Solis – 42 months. These defendants criminal conduct in this case far exceeded that of Mr. Parada. From early 2007 until March 18, 2008 these defendants all distributed more than 500 grams of cocaine in different transactions. Everything about the conduct of these other defendants in this case is more egregious than Mr. Parada's conduct. The only difference that the Court could weigh in favor of these other defendants is that they plead guilty pursuant to a plea agreement with the Government to conspiracy to distribute 500 grams or more of cocaine but no gun enhancement. Fairness should dictate the least culpable defendant in this case should not be treated disparately. In contrast, Mr. Parada chose to exercise his constitutional right to require the Government to prove its case against him on the two counts that he was charged.

> **D.** **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense, to Afford Adequate Deterrence, to Protect the Public from Future Crimes and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

Some of the very statutory factors which are the ultimate guide to sentencing decisions post-*Booker* clearly argue in favor of less prison time, not more. With a defendant ultimately suffering from gang membership, for example, there is facially less need for the sentence imposed to protect the public from further crimes of the defendant, but to provide the defendant with needed educational or vocational or correctional training and/or treatment and means to leave the gang in light of what the trial testimony revealed are his options "become catholic and have family or face death if he tries to leave the gang."

Nor can it promote respect for the law to give Mr. Parada a prison sentence that can quite credibly be viewed as greater than the sentence he likely would have received if there were no guideline as to his actual role in this offense. In light of the sentencing disparity outlined above, and the other factors outlined by section 3553 including the nature and circumstances of the

17

offense/role and the character of Mr. Parada, the circumstances of this case, Mr. Parada requests that the Court sentence him lower than the low end of the Guidelines.

A sentence lower than the low end of the Guideline reflects the seriousness of Mr. Parada's role and actions on the date of this incident, while at the same time accounting for the circumstances surrounding this offense and his individual circumstances. A lower than the low end of the Guideline sentence operates to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to protect the public and to provide Mr. Parada with needed educational or other correctional treatment and decrease the chances that he would return to Court, albeit there is a zero to low risk of recidivism in light of his minor role in this offense due to membership in a gang.

Mr. Parada has already been incarcerated without bond since April 2008. In terms of rehabilitation, Mr. Parada who has been separated from family and friends has learnt his lesson from the Jury's verdict. There is already a strong deterrence value in the fact that Mr. Parada has already served more than seventeen months of any sentence imposed.

In terms of retribution, regarding this criminal act, it is safe to say that with the proper placement in a program that will allow him to leave the gang, namely, HOMIES UNIDOS, he will be able to manage his affairs effectively and resume to being a productive citizen in El Salvador or a third country when deported.

Finally, the ends of justice will be served if Mr. Parada is sentenced to AOL 24: 92-115 months instead of the guideline range of AOL 28: 130-162 months or AOL 34: 262-327 months.

**<u>Other Section 3553(a) factors</u>**

Additionally, a sentence of 92-115 months although not suggested by the advisory guideline range but defendant's objections is appropriate in light of the other factors specified in

18 U.S.C. § 3553(a). First, pursuant to U.S.S.G. 5K2.0, the combination of offense and offender characteristics remove this case from similar cocaine base, firearm and potential Career Criminal Act cases. Under 18 U.S.C. 3553(a)(1), regarding the nature and circumstances of the offense and the history and personal characteristics of persons convicted of similar offense under the Career Criminal Act and even without this structure, Mr. Parada is highly atypical in many respects. The nature and circumstances surrounding the drug offense extend over a period of time, during which time he was to have dealt or been involved in dealing less than 500 grams of cocaine. Obviously, this is the most meager type of distribution, covering a protracted period, indicative of habit maintenance. This paltry amount is consistent with all other low level drug offenses in the defendant's record. This profoundly contrasts with tens of thousands of cases the Sentencing Commission has and many cases the Court has seen, particularly as it related to the Career Criminal Act. Additionally, this lengthy endeavor with few sizeable transactions stands in distinction and differentiation with persons convicted under the same statute for the same amount of drugs.

The history and characteristics of Mr. Parada reveal an 8th grade dropout, albeit a professional tree trimmer, who has shown propensity to work having maintained steady employment since he was young. He has had virtual full time employment while in the community.

Mr. Parada has truly rehabilitated himself because after his incarceration in 2001 he has continually maintained employment. Additionally, after the 2005 incident and prior to his arrest in this case, he continued with his employment and did not re-offend thereby rehabilitating himself. Numerous Courts of Appeal have recognized that unusual efforts of rehabilitation are a permissible ground for a departure. *See*, e.g., *United States v. Maier*, 975 F.2d 944 (2nd Cir.

1992) (comparing holdings of other circuits and holding that a defendant's rehabilitation efforts can, in an appropriate case, warrant a downward departure). In *United States v. Sheila McGee*, 802 F. Supp. 843 (2nd Cir. 1992) a substantial downward departure from a guideline range of 30-37 months to a sentence of 5 years probation was affirmed where imprisonment was avoided because defendant had been a productive member of the workforce. Mr. Parada's efforts at pre and post-offense rehabilitation is remarkable.

Next, the goals of sentencing pursuant to 18 U.S.C. 3553(1)(A) succinctly stated are: just punishment; general and personal deterrence; incapacitation through incarceration and rehabilitation. The scientific criteria for causation are temporality, concomitant co-variation and lack of spuriousness. Mr. Parada's criminal involvement has been caused by marijuana and cocaine dependence. Therefore, rehabilitation through drug counseling while confined and lengthy impatient counseling upon release justifies lenient punishment and with causation considered, is the necessary and sufficient casual antecedent to ameliorating and eliminating criminal activity. As such a sentence between 92-115 months would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a)(2)(A) and (a)(2)(B).

Finally, a sentence of imprisonment between 92-115 months would also protect the public from further crimes of Mr. Parada and provide him with training in an effective manner, as prescribed by 18 U.S.C. § 3553(a)(2)(C) and (a)(2)(D). While imprisoned, Mr. Parada would have the opportunity to pursue his interest in the blue collar field through Bureau of Prison programs, as well as participation in BOP 500 hour drug treatment. When he finishes his term of imprisonment, he will come out with job skills that will enable him to be a productive member of

society and decrease the chances that he would return to dealing drugs, in addition to the tools he would acquire in the drug program.

> … the Sentencing Guidelines do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process.
> … In areas where the Sentencing Commission has not spoken … district discretion in devising sentences that provide individualized justice". *U.S. v. Williams*, 65 F. 3d 301, 309-310 (2d Cir. 1995).

Under the above-described circumstances, "individualized justice" for Mr. Parada is a sentence below 130-162 months or 262-327 month range, that is between 92-115 months.

## RESTITUTION

Defendant agrees that restitution is inapplicable in this case.

## FINE

The defense agrees with the finding that Mr. Parada does not have adequate resources including but not limited to any known savings or assets to pay any fine or the cost of incarceration or supervision, upon release in light of the likelihood he will be deported.

## CONCLUSION

For the reasons stated above, Defendant, Jorge Parada respectfully requests that this Court reduce his sentencing range in order to avoid unwarranted disparity in sentencing, and sentence him below the 130-162 months or 262-327 month range, articulated in defendant's objections and position with respect to sentencing factors, all in order to impose a sentence required by statute to be "sufficient, but no greater than necessary," which is 92-115 months.

Respectfully Submitted,

THE IWEANOGES FIRM, P.C.

Jorge Parada
Defendant by Counsel

By: _____/s/_____
    John O. Iweanoge, II (VSB#: 47564)
    IWEANOGE LAW CENTER
    1026 Monroe Street, N.E.
    Washington, DC 20017
    Phone: (202) 347-7026
    Fax:   (202) 347-7108
    Email:  joi@iweanogesfirm.com
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jonathan Fahey, AUSA
Jeanine Linehan, AUSA
Inayat Delawala, AUSA
United States Attorney's Office
for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314-5794

Jerome Aquino, Esquire
Jay Connell, III, Esquire
5901 Kingstown Village Parkway, #302
Alexandria, Virginia 22315

Michael Arif, Esquire
Matthew Greene, Esquire
8001 Braddock Road, #100
Springfield, Virginia 22151

_____/s/_____
John O. Iweanoge, II (VSB#: 47564)
IWEANOGE LAW CENTER
1026 Monroe Street, N.E.
Washington, DC 20017
Phone: (202) 347-7026
Fax:   (202) 347-7108
Email:  joi@iweanogesfirm.com
Attorneys for Defendant