IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JORGE PARADA, | ) |
| Petitioner, | ) ) ) ) |
| v. | ) Criminal Action No. 1:08-cr-132 |
| UNITED STATES OF AMERICA, | ) Civil Action No. 1:13-cv-906 ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Jorge Parada's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 380. The motion has been fully briefed by the parties. On March 4, 2015, the Court held an evidentiary hearing to determine whether Petitioner's trial counsel had communicated the government's plea offers to him. For the reasons set forth below, as well as those stated in open court, the motion will be denied.

### I. Background

This case arose out of the acts of three Mara Salvatrucha, also known as MS-13, gang members, including Petitioner. On or about December 1, 2007, Petitioner's co-defendants conspired to murder a rival gang member in order to gain entrance to or maintain or increase their position in MS-13. On December 2, 2007, the co-defendants murdered a rival gang member and attempted to murder another. Throughout 2007 until about March 14, 2008, the defendants, including Petitioner, also conspired with other gang members to distribute 500 grams or more of cocaine.

On December 18, 2008, the defendants were charged in a third superseding indictment.[1] Dkt. No. 191. Petitioner was charged with two counts: conspiracy to commit murder in aid of racketeering and conspiracy to distribute cocaine. *Id.* On May 26, 2009, a jury trial commenced. On June 11, 2009, the jury found Petitioner guilty of conspiracy to distribute cocaine but acquitted him of the conspiracy to commit murder charge. Dkt. No. 280. On October 16, 2009, the Court sentenced Petitioner to 300 months of imprisonment with credit for time served. Dkt. No. 309.

On October 23, 2009, Petitioner filed a timely notice of appeal to the Fourth Circuit. Dkt. No. 314. In an unpublished opinion, the Fourth Circuit affirmed. *United States v. Perez-Amaya*, 453 F. App'x 302 (4th Cir. 2011). On July 25, 2013, Petitioner filed the motion to vacate currently before the Court. Dkt. No. 380. The government filed its response in opposition (Dkt. No 388), to which Petitioner replied. Dkt. No. 391. Petitioner also moved to supplement his pleading (Dkt. No. 386), which was granted by the Court. Dkt. No. 390. The government then filed a supplemental response. Dkt. No. 393.

Upon an initial review of the pleadings, the Court determined that an evidentiary hearing was necessary on the issue of whether Petitioner's counsel had communicated the government's plea offers to him before trial. The Court appointed William Cummings to represent Petitioner for this limited purpose. At the hearing, held on March 4, 2015, the Court heard testimony from Petitioner as well as his trial counsel John Iweanoge. The Court finds that the matter is now ripe for disposition.

---

[1] The grand jury returned the first indictment, which did not name Petitioner as a defendant, on April 10, 2008. On April 24, 2008, the grand jury returned a superseding indictment, which charged Petitioner with a single count of conspiracy to distribute cocaine. Dkt. No. 28. On August 14, 2008, a second superseding indictment was returned charging Petitioner with the same single count. Dkt. No. 122. He was not charged with the additional conspiracy to commit murder count until the third superseding indictment.

2

## II. Legal Standard

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

## III. Analysis

In his motion, Petitioner advanced two bases for relief—ineffective assistance of counsel and his being sentenced on facts not presented in the indictment. At the evidentiary hearing, however, Petitioner, through his counsel, withdrew the supplemental memorandum in which he claimed that he was sentenced on facts not presented in the indictment or found by the jury, as it was based on "an inaccurate factual premise that there was a mandatory minimum sentence." Evidentiary Hr'g Tr. at 3. The Court will therefore examine only the ineffective assistance claim.

Petitioner claims that he received ineffective assistance due to his counsel's failure to: (1) advise him of a plea offer from the government and give proper advice on accepting a guilty plea; and (2) object to the Court's consideration of prior convictions to enhance his sentence as a career offender. Dkt. No. 380. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong requires a showing that counsel failed to provide reasonably effective assistance—in other words, that counsel's conduct fell below an objective standard of

3

reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Under this standard, the Court will consider each of Petitioner's arguments.

    *a. Counsel's Alleged Failure to Advise Him of the Government's Plea Offers*

Petitioner's first allegation of ineffective assistance—that his counsel did not communicate the government's plea offers to him—required the Court to conduct an evidentiary hearing because, if proven, counsel's conduct would constitute objectively unreasonable assistance. *United States v. Brannon*, 48 F. App'x 51, 54 (4th Cir. 2002) (holding district court erred in not holding evidentiary hearing to judge the credibility of witnesses on petitioner's claim that a plea offer was never communicated to him).

The Court first heard testimony from Petitioner. On direct examination, he testified that he was initially charged with only a single count of conspiracy to distribute more than 500 grams of cocaine. He stated that he had prior criminal convictions for assaulting a police officer and distribution of a controlled substance. He then asserted that his counsel never advised him that he was at risk of being labeled a career offender in this case based on these prior convictions. He also testified that his counsel failed to tell him that the government was going to file a certification based on his criminal record that would increase the mandatory minimum sentence if he proceeded to trial.

Mr. Cummings then showed Petitioner a letter from the government, dated July 31, 2008, extending him a plea offer. In the letter, the government stated that in exchange for his guilty

plea, it would not certify his prior drug conviction, which would have enabled him to avoid an increased mandatory minimum sentence of ten years. Def.'s Ex. 1. Petitioner testified to never having seen the letter in July 2008. He also testified that Mr. Iweanoge did not advise him in July 2008 that if he were to plead guilty, his sentencing guidelines range could be reduced by up to three levels simply by admitting guilt. Petitioner stated that, had he been made aware by counsel of his ability to reduce his exposure to jail time by pleading guilty, he would have "considered seriously taking a guilty plea." Evidentiary Hr'g Tr. at 10.

Petitioner then testified that he was charged in a superseding indictment with an additional count for conspiracy to commit murder. He claimed that he did not know the government had certified his prior drug conviction at that time. He also testified that, in February 2009, Mr. Iweanoge did not show him a letter from the government in which it extended a new plea offer. Petitioner concluded his direct examination by repeating that, had he been communicated the government's plea offers by his counsel, he would have seriously considered pleading guilty to avoid the sentencing enhancements that were eventually imposed.

On cross-examination, Petitioner admitted that he is a loyal member of MS-13 and was during the time of the trial. He admitted that "part of being a loyal member of MS-13 is that you don't cooperate with the government." *Id.* at 13. He stated that he "didn't want to cooperate with the government because I have nothing to tell the government," and therefore would not have taken a plea agreement that required him to cooperate. *Id.* at 14. He also testified that he "repeatedly" told his attorney that he was innocent of the charges against him "right from the start." *Id.* at 17, 19. Petitioner continued to assert his innocence at the hearing.

The government then presented the testimony of Petitioner's trial counsel, Mr. Iweanoge. He testified to having met with Petitioner on numerous occasions at the Northern Neck jail to discuss the government's various plea offers, which Petitioner rejected because he consistently

5

maintained his innocence. Petitioner's belief in his innocence continued "[e]ven after his conviction." *Id.* at 26. Mr. Iweanoge's handwritten notes corroborate this testimony. Gov't Exs. 1–6. For example, in a note dated September 26, 2008, Mr. Iweanoge wrote:

> The [defendant] and I went over the [government's] plea offer and his criminal history and the certification of his prior conviction for a narcotics offense. The [defendant] advised me as he has on prior occasions that he is not interested in a plea [because] he did not conspire ... [or] distribute any cocaine. ... Additionally, he has nothing to cooperate about and will not cooperate with the government and they know he has not done anything wrong.

Gov't Ex. 3. In another note, following a conference with Petitioner on November 7, 2008, Mr. Iweanoge wrote that "[the defendant] and I went over his case, procedure, posture, prior conviction, potential of incarceration, etc. and he wants his day in court." Gov't Ex. 4. Similarly, on January 13, 2009, Mr. Iweanoge visited him in the jail and wrote that Petitioner "doesn't want to plead guilty and asserts his innocence and rejected the [government's] plea offer and going forward with trial and he is okay with the continuance of the trial date." Gov't Ex. 6. Mr. Iweanoge testified that another reason Petitioner was not interested in pleading guilty was that he did not want to cooperate with the government because his cousin was a co-defendant. He advised Petitioner that they could "take out the cooperation language" from the plea agreement, but Petitioner responded that he could not "plead guilty to something that I didn't do." *Id.* at 37.

During cross-examination, Mr. Iweanoge admitted that his meeting with Petitioner to discuss the first plea offer, described in his note dated September 26, 2008, occurred more than a month after the date on which the offer was set to expire. *Compare* Def.'s Ex. 1, *with* Gov't Ex. 3. He explained that, due to his "funding issues," the government had nevertheless allowed the plea offer to remain open past the deadline and was "still available" on the date of his meeting with Petitioner. Evidentiary Hr'g Tr. at 40. He also testified that he "absolutely" told his client

6

that if he were to accept the plea offer, he would not have to cooperate because the agreement did not have a mandatory cooperation clause. *Id.* at 40–41.

After hearing the evidence, it is clear to this Court that Petitioner had opportunity after opportunity to meet with his attorney and discuss the government's plea offers. Petitioner's testimony—that his trial counsel failed to advise him of the government's plea offers—is simply incredible. The Court finds trial counsel's version of the facts, which have been corroborated by his contemporaneous handwritten notes, much more convincing. The Court finds that Petitioner's ultimate decision to proceed to trial was based not on his counsel's failure to advise him of the plea offers and their ramifications at sentencing, but rather on his persistent assertion of innocence and his refusal to cooperate with the government.

Even at the evidentiary hearing, Petitioner stated that he believes he was innocent of the charges and would not have agreed to assist the government. Although the first plea offer did not contain a mandatory cooperation clause, the second proposed plea agreement required Petitioner to agree to "cooperate fully and truthfully with the United States, and provide all information known to [him] regarding any criminal activity as requested by the government." Gov't Ex. 8. In this regard, Petitioner's testimony is actually consistent with Mr. Iweanoge's testimony that he refused to accept the second plea offer in part on that basis. In light of the above findings, the Court is persuaded that Petitioner's counsel did not render objectively unreasonable assistance and therefore the first ground of the ineffective assistance claim is denied.

  b. *Counsel's Alleged Failure to Object to the Court's Consideration of Prior Convictions to Enhance His Sentence as a Career Offender*

Petitioner has also asserted that his trial counsel's assistance was ineffective by failing to object to the Court's consideration of his prior convictions with respect to the career offender enhancement at sentencing. The record clearly shows, however, that defense counsel in fact

7

made *multiple* objections to this proposed enhancement. Mr. Iweanoge submitted a position paper on sentencing in which he objected to the presentence investigation report that included the career offender enhancement, stating that Petitioner's criminal history was overrepresented. Dkt. No. 302 at 4. He then repeated his objections before the Court in a lengthy argument at the sentencing hearing. Sentencing Hr'g Tr. at 27–32. Despite counsel's advocacy, the Court denied Petitioner's request to modify the guideline range calculated in the presentence report and applied the career offender enhancement. *Id.* at 55.

The Court therefore finds that defense counsel's efforts during the sentencing process were more than reasonable, especially in light of the presumption of reasonableness that his performance is due. *Dyess*, 478 F.3d at 237. Because Petitioner's claim that counsel failed to object to the career offender enhancement is factually incorrect, as demonstrated by the record, Petitioner's *Strickland* claim on this ground fails as well.

## IV. Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 380) will be denied with prejudice.

An appropriate Order shall issue.

May 5, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge